

*Application granted. This Court will hold a pre motion conference simultaneously with the initial pretrial conference already set for that time.*

**SO ORDERED:**

*[signature]*

WILLIAM H. PAULEY III U.S.D.J.
4/30/2008

TESSER, RYAN & ROCHMAN, LLP

ATTORNEYS AT LAW
509 MADISON AVENUE
NEW YORK, N.Y. 10022
(212) 754-9000
FAX: (212) 754-5906

**RECEIVED**
APR 25 2008
CHAMBERS OF
WILLIAM H. PAULEY
U.S.D.J.

April 24, 2008

The Honorable William H. Pauley III
Daniel Patrick Moynihan United States
Courthouse, 500 Pearl St.
Room 2210, Courtroom 11D
New York, NY 10007

Re:    <strong>Cintas Corporation et al. v. UNITE HERE, et al., 08-CV-2185 (WHP)</strong>

Dear Judge Pauley:

All Defendants who have been served request a pre-motion conference regarding their planned Rule 12(b)(6) motion to dismiss Plaintiffs' Complaint in its entirety. The motion will show that Plaintiffs' federal RICO claims (Counts 1-4) and Lanham Act claims (Counts 6-9) are legally deficient and should be dismissed; and that the Court therefore should decline to exercise supplemental jurisdiction over Plaintiffs' pendent state law claims (Counts 5, 11-14). Defendants anticipate filing a joint motion and seeking additional pages for the supporting memorandum addressing the 103-page Complaint and voluminous incorporated attachments.

1. <u>The Federal RICO Claims</u>. The gravamen of these claims is that Defendants have committed the RICO predicate crime of extortion by "public[izing] . . . misleading, negative and/or damaging information about Cintas to countless third parties" and urging those third parties not to deal with Cintas, Cplt. ¶¶ 93, 98-99, with the ultimate purpose of putting Cintas in such "fear of economic loss" as to exert "unbearable . . . pressure" on Cintas to yield to Defendants' alleged demand that Cintas "enter into a card check and neutrality agreement with Defendants UNITE HERE and the Teamsters," *id.* ¶ 8-9, 97.

A card check and neutrality agreement establishes a process to govern whether and under what conditions an employer will recognize a union as the representative of its employees. The employer makes two commitments in such an agreement: (1) to remain neutral and not actively oppose the union's efforts to organize the employees; and (2) to recognize the union if a majority of the employees sign cards designating the union as their representative, subject to a "check" of those cards for authenticity. It is settled that such agreements are lawful. *HERE, Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561 (2d Cir. 1993), *HERE, Local 57 v. Sage Hosp. Res.*, 390 F.3d 206 (3d Cir. 2004), *HERE, Local 2 v. Marriott Corp.*, 961 F.2d 1464 (9th Cir. 1992).

Cintas' RICO claims fail as a matter of law in several respects, two of which are outlined below. First, union pressure on an employer to agree to card check/neutrality cannot under any circumstances be "extortionate," because achieving such an agreement with an employer is a lawful union objective. *United States v. Enmons*, 410 U.S. 396, 399-401, 406 n.16 (1973); *United States v. Clemente*, 640 F.2d 1069, 1076-78 (2d Cir. 1981). As in *Clemente*, Cintas' "extortion" theory here is not based on any allegation that Defendants used actual or threatened force or violence against Cintas. Rather, Cintas' theory rests on allegations that Defendants used speech activities to put Cintas in "fear of economic loss." Cplt. ¶ 8. *Clemente* squarely holds that "the use of fear of economic loss" can be extortionate if but only if that "use" is "to achieve a wrongful purpose." *Id.* at 1077; *accord George Lussier Enters. v. Subaru*, 393 F.3d 36, 50 (1st Cir. 2004) ("economic fear is wrongful under the Hobbs Act if the plaintiff had a pre-existing statutory right to be free from defendants' demand"); *Brokerage Concepts v. U.S. Healthcare*,

140 F.3d 494, 522-26 (3d Cir. 1998) (describing and adopting "the position of the First and Second Circuits" on this point). As set out above, it is settled that card check/neutrality agreements are lawful. That being so, Cintas' allegations here do *not* meet the *Clemente* requirement that Defendants used fear of economic loss "to achieve a wrongful purpose."

Cintas' RICO claims also are foreclosed by *Scheidler v. NOW, Inc.*, 537 U.S. 393 (2003), which "tightened the requirements for finding that a defendant has committed extortion" by holding that "there must be a showing that the defendant did not merely seek to deprive the victim of the property right in question, but also sought *to obtain that right for himself.*" *United States v. Gotti*, 459 F.3d 296, 300 (2d Cir. 2006) (emphasis added). It is clear that successful pressure by Defendants on Cintas to agree to card check/neutrality would, at most, *deprive* Cintas of its asserted property rights "to discuss the union with its employees or dissuade [them] from seeking to join the union" and to refuse "recogni[tion] [of] the union as the employees' bargaining agent" without "a secret-ballot [NLRB] election." Cplt. ¶ 9. Defendants would not, were that pressure successful, *obtain for themselves* those asserted property rights of Cintas— any more than the defendant abortion protestors in *Scheidler*, by depriving the plaintiff abortion clinics of their asserted property right to perform abortions, obtained for themselves the clinics' asserted property right to perform abortions. Under *Scheidler*, "the statutory requirement that property must be obtained from another . . . to constitute extortion" is *not* met by an allegation that a defendant has used wrongful means "to dictate and restrict the actions and decisions of [a] business[ ]," 537 U.S. at 405-06—and that is all that Cintas alleges here.

The Second Circuit's construction of the "wrongful use of fear of economic loss" requirement and the Supreme Court's construction of extortion's "obtaining property" requirement are dispositive of Cintas' RICO claims on purely statutory grounds. In addition, those statutory requirements serve to ensure, in a case such as this, that the federal extortion statute does not trench on the free exercise of First Amendment and federal labor law rights. Labor unions—like civil rights and anti-abortion groups—have a First Amendment right to publicize their objections to a company's business practices, and to urge independent third parties not to deal with that company, as a means of pressuring the company to change its behavior. *E.g. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568 (1988); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907-15 (1982); *Beverly Hills Foodland v. UFCW Local 655*, 39 F.3d 191, 197 (8th Cir. 1994). It is also settled that where, as here, Congress has not in the federal labor laws prohibited a union from engaging in a specific type of conduct designed "to put economic pressure on [an] employer" with whom the union has a labor dispute, "Congress intended that the conduct involved be unregulated because left 'to be controlled by the free play of economic forces.'" *Lodge 76, Int'l Ass'n of Mach. & Aero. Workers v. Wisconsin Empl. Rel. Comm'n*, 427 U.S. 132, 133, 140 (1976) (citation omitted). These considerations reinforce the conclusion that Cintas' Complaint does *not* state a claim that meets the extortion statute's "wrongful use of fear of economic loss" and "obtaining property" requirements. *Cf. DeBartolo*, 485 U.S. at 575-58; *Enmons*, 410 U.S. at 411; *Eastern R.R. Pres. Conf. v. Noerr Motor Freight*, 365 U.S. 127, 136-141 (1961); *Sage Hosp.*, 390 F.3d at 219.

Given Cintas' allegations that Defendants in carrying out their publicity and boycott campaign have in some instances "defam[ed]" Cintas or committed other wrongs not protected by the First Amendment or the federal labor laws, *see* Cplt. ¶ 8, we note that the law provides for ample remedies designed specifically to deal with any such wrongs. *See e.g. Linn v. Plant Guard Workers*, 383 U.S. 53 (1966). What the law does *not* provide for is a RICO action seeking to brand Defendants' entire publicity and boycott campaign as *criminal extortion*.

- 2 -

2.  The Federal Lanham Act Claims.  Cintas asserts four Lanham Act claims, each based on the allegation that Defendant UNITE HERE—in establishing what Cintas itself admits would be an otherwise non-infringing "gripe site" used to criticize a company's products without selling competing ones—acted improperly by using the domain name "cintasexposed." *See* Cplt. ¶¶ 252-55.  Each claim has multiple legal deficiencies; the following are just the most glaring.

As to the trademark infringement and unfair competition claims (Counts 6 & 8), Cintas' Complaint fails adequately to allege two essential elements common to both claims: (i) that defendant used plaintiff's mark to sell goods or services within the market covered by the plaintiff's mark, *Bosley Med. v. Kremer,* 403 F.3d 672, 676 (9th Cir. 2005); *Gmurzynska v. Hutton,* 355 F.3d 206, 210-11 (2d Cir. 2004); *Sodexho v. Hotel Empl.,* 989 F. Supp. 169, 171-72 (D. Conn. 1997); and (ii) that defendant's use is likely to cause confusion as to the source of plaintiff's services, *Taubman v. Webfeats,* 319 F.3d 770, 778 (6th Cir. 2003).  With regard to the first, or "commercial use," element, Cintas' own Complaint shows that the cintasexposed website is a "gripe site," Cplt. ¶¶ 252-55, *i.e.,* a site which is *not* put to the commercial use of selling services of the kind sold by Cintas, but to the noncommercial use of airing anti-Cintas commentary.  With regard to the second, or "likelihood of confusion," element, Cintas itself admits that users, immediately on entering the site, are "informed that the site purports to be 'an independent source of consumer information from UNITE HERE!'" *Id.* ¶ 238.  That admission is fatal to Cintas, because causing momentary confusion is *not* actionable as trademark infringement or unfair competition in the internet context. *Lamparello v. Falwell,* 420 F.3d 309, 315 (4th Cir. 2005).  And, while some courts have created a narrow "initial interest" exception, that exception cannot rescue Cintas, for it applies only to the use of a confusing domain name to draw consumers to a site selling goods that compete directly with the trademark owner's, not to draw them to pure criticism of the mark owner's product. *Id.* at 317; *Bihari v. Gross,* 119 F. Supp. 2d 309, 320 (S.D.N.Y. 2000).  Further, no consumer interested in Cintas' services reasonably could believe that Cintas would sponsor "cintasexposed," as "exposed" is a word that only a critic would (at least outside the film or tanning salon industries) append to the company's web address. *Cf. Bally v. Faber,* 29 F. Supp. 2d 1161, 1167 (C.D. Cal. 1998) (company name with "sucks" appended to it is not "confusing" as a matter of law).

As to the dilution claim (Count 7), an essential element is that defendant made commercial use of plaintiff's mark. *TMI v. Maxwell,* 368 F.3d 433, 436 (5th Cir. 2004).  And, as noted, Cintas' own Complaint shows that UNITE HERE engaged in no commercial use.  Further, as a matter of law, a mark's association with the owner's product is not diluted by mere commentary on the product; only use of the mark in connection with a *different* product causes "dilution." *LL Bean v. Drake,* 811 F.2d 26, 33 (1st Cir. 1987).

As to the cybersquatting claim (Count 9), an essential element is that defendant's domain name is "confusingly similar to" or "dilutive of" plaintiff's mark.  15 U.S.C. § 1125(d)(1)(A).  But as noted, Cintas' Complaint shows that there is no "confusing[] similar[ity]" here and that the name "cintasexposed" is not "dilutive of" the association between Cintas and its services.

Respectfully submitted,

Irwin Rochman
Counsel for Defendants

Cc:     Plaintiffs' Counsel (by overnight mail)